## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re

**SUNSHINE THREE REAL ESTATE**　　　　　　　　Chapter 11
**CORPORATION,**　　　　　　　　　　　　　　　Case No. 09-17821-JNF
　　　Debtor

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**SUNSHINE THREE REAL ESTATE**
**CORPORATION,**
　　　Plaintiff

v.　　　　　　　　　　　　　　　　　　　　　Adv. P. No. 09-01330

**CHARLES J. HOUSMAN, Trustee of Pine Banks**
**Nominee Trust, WALLACE CAPITAL**
**CORPORATION, and STEVEN ROSS, ESQ.,**
　　　Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

The matters before the Court are 1) the Motion of Plaintiff, Sunshine Three Real

Estate Corporation (the "Debtor"), for Leave to File an Amended Adversarial Complaint

through which the Plaintiff seeks permission to amend its Complaint to add its sole stockholder, Roberta A. Golden ("Golden"), as a Co-Plaintiff (collectively the "Plaintiffs") and to amend and add a count to its original Adversarial Complaint; and 2) the Joint Motion to (I) Dismiss Adversary Proceeding filed by Charles J. Housman, Trustee of Pine Banks Nominee Trust ("Pine Banks"), Wallace Capital Corporation ("Wallace"), and Steven Ross, Esq. (collectively the "Defendants") and (II) Recover Legal Fees and Other Costs. The Defendants oppose the Motion for Leave to File an Amended Complaint and again seek the recovery of legal fees and costs. The Debtor opposes the Motion to Dismiss.

The Court heard the Motion for Leave to Amend and the Joint Motion on January 21, 2010 and took the matters under advisement. Because the facts with respect to the existence of state court proceedings in Maine are uncontested, and because both parties freely referenced the record pertaining to the Motion filed by Pine Banks for Relief from the Automatic Stay, which the Court granted, the Court incorporates by reference its decision of October 26, 2009, *see* In re Sunshine Three Real Estate Corp., No. 09-17821-JNF, 2009 WL 3617798 (Bankr. D. Mass. Oct. 26, 2009). Additionally, the Court takes judicial notice of the entire record in the bankruptcy case and this adversary proceeding.

The issues presented include whether this Court is deprived of jurisdiction to consider some or all of the counts set forth in the Debtor's Adversarial Complaint, whether res judicata bars relitigation of some or all of the counts in that Complaint, and whether with respect to Count V of the Adversarial Complaint and Count X of the Amended Adversarial Complaint the Plaintiffs have stated plausible claims for relief. *See* Fed.R. Civ.

P. 12(b)(1) and (b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012.

The Court now makes its findings of fact and rulings of law in accordance with Fed.
R. Bankr. P. 7052.

## II. BACKGROUND

The Debtor filed a voluntary Chapter 11 petition on August 17, 2009, the same day
Golden, an attorney, transferred property located at 140 Stearns Road, Ogunquit, Maine
(the "property") to it for nominal consideration.  The Debtor listed the property, a
residence, on Schedule A-Real Property with a value of $2,500,000.  The Debtor also listed
a "Counterclaim" with a value of $2,500,000 against unidentified parties on Schedule B-
Personal Property.  On Schedule D-Creditors Holding Secured Claims, the Debtor listed
Pine Banks and Wallace as secured creditors with contingent, unliquidated and disputed
claims of $1,200,000 and $600,000, respectively.  The Debtor listed the Town of Ogunquit,
Maine on Schedule E-Creditors Holding Unsecured Priority Claims with a claim in the
amount of $8,500 for property taxes.[1] It listed no other creditors.

Approximately six weeks after the Debtor commenced its Chapter 11 case, Golden
executed an "Assignment of Rights," dated September 24, 2009.  The Assignment provides:

> I, Roberta A. Golden, of Framingham, Middlesex County,
> Massachusetts, hereby fully transfer and assign all my right, title and interest
> in any and all actions and choses-in-action [sic] in law, equity or otherwise,
> now standing in my name, or as I may otherwise have, whether brought by
> me, involving Pine Banks Nominee Trust, Wallace Capital Corporation [sic]
> and or [sic] Steven Ross, arising from my former ownership of realty in

---

[1] As will be discussed below, the property taxes owed to the Town of Ogunquit
properly should have been listed on Schedule D as it holds a secured claim.

Ogunquit, York County, in the State of Maine, located at 140 Stearns Road, to Sunshine Three Real Estate Corporation of said Framingham.

Golden and her husband, Peter A. Poulos, the president of the Debtor, have owned the property through various entities for approximately twenty years. Golden intended to build a large home on the lot, from which there is an unobstructed view of the Atlantic Ocean and the Marginal Way in Ogunquit, Maine, and eventually make it her retirement home. Golden personally borrowed money from Pine Banks to construct the home. On November 24, 2004, she executed a promissory note for a construction loan in the amount of $1,050,000, and granted Pine Banks a mortgage on the property. Under the terms of the note, which provided for interest at an annual rate of 14%, Golden received an initial advance of $550,000. Interest only was payable beginning on June 29, 2005, with the entire balance due before November 29, 2005. On November 24, 2004, Golden also executed a Construction Holdback Agreement. The note expressly provided, in bold type, that it was a contract for a short-term loan and that the obligation was *commercial in nature* and, thus, was exempt from the Federal Truth in Lending Act and Regulation Z (emphasis supplied). *See generally* 15 U.S.C. §§ 1601 et seq.

Golden encountered difficulties in constructing the home at 140 Stearns Road. The original contractor breached his obligations under the construction contract and, in addition, abutters challenged the issuance of the building permit by the Town of Ogunquit. Because of defaults under the Pine Banks note, on January 17, 2006, Golden, executed a note and second mortgage in favor of Wallace. That note was in the original principal amount of $600,000 and required the payment of 10 points. It also required the payment

-4-

of monthly interest.  The entire principal balance was due on September 17, 2006.

Golden defaulted on her obligations under both notes, and, on March 23, 2006, Pine Banks and Wallace filed a Complaint for Foreclosure in the York County Maine Superior Court.  Golden answered the Complaint and asserted twenty affirmative defenses, as well as six counterclaims, including breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); failure to comply with the loan documents and change in course of dealings (Count III); fraud, deceit and misrepresentation (Count IV); "violation of Me. Rev. St. Ann. tit. V., ch. 10[2] and violation of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)" [sic][3] (Count V); and violation of Mass. Gen. Laws, ch. 93A, §§ 2 and 11 (Count VI).  She specifically complained about the failure of Pine Banks and Wallace to account for payments of the mortgage and application of interest payments.

---

[2] The Court is unable to locate a section of Maine Revised Statutes that corresponds to this citation.

[3] Section 45(a) provides in relevant part:

(a) Declaration of unlawfulness; power to prohibit unfair practices; inapplicability to foreign trade

(1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.

15 U.S.C. § 45(a)(1).  Subsection (a)(2) empowers the Federal Trade Commission to prevent the use of unfair methods of competition.  The Debtor did not explain how or why § 45 would apply to the conduct of Pine Banks and Wallace.

Although the Superior Court denied the Motion for Summary Judgment filed by Pine Banks and Wallace on February 7, 2007, the parties eventually executed an Allonge on July 31, 2007.

The Allonge provided that Golden would pay $50,000 upon its execution for reinstatement of both loans with the funds to be applied to accrued interest under the Pine Banks note.  Additionally, the parties agreed to the modification of Golden's obligations to Pine Banks and Wallace as follows:

1) The extension of the maturity date for both obligations to August 1, 2008 with no required monthly payments;

2) A reduction in the interest rate on the Wallace note to 12%, retroactive to the closing on January 17, 2006;

3) Disbursement by Wallace of the remaining balance of the construction loan in the amount of $405,152.30 in accordance with a disbursement schedule agreed to among the parties and the advance of funds for the payment of all delinquent real estate taxes;

4) Golden's agreement to pay increased costs above those set forth in the disbursement schedule from her own funds within a period of 30 days after any individual disbursements;

5) The waiver by Pine Banks and Wallace of any default interest and late fees accrued to date;

6) Substantial completion of construction by February 1, 2008; and

7) Golden's agreement to be responsible for attorneys' fees and costs in the aggregate amount of $18,000, which were to be collected upon the maturity of the obligations without interest and without prejudice to the collection of additional fees for any future defaults.

In the Allonge, Golden also acknowledged that, as of July 30, 2007, she owed Pine Banks $987,634.66 in principal and interest and Wallace $271,762.69 in principal and accrued

interest.  Additionally, she acknowledged and confirmed "the validity and enforcement

of the underlying Notes and Mortgages with Pine Banks and Wallace."  Finally, Golden

agreed to the following:

> [Entry of] a stipulation and Judgment and dismissal of he [sic] counterclaims
> in the Superior Court, which shall be held in escrow, and not be filed until
> August 1, 2008, or sooner if the loan is paid in full, which judgment shall
> acknowledge that Golden has defaulted on the obligations, but there shall be
> no judgment of Foreclosure entered.  The Judgment shall also provide that
> a Judgment for Foreclosure shall be entered by the Court in the future, if
> there are any further defaults by Golden in the loan obligations, and in the
> performance of this Agreement.  The Court would accept an affidavit as
> evidence of any default, and the Plaintiff would provide a copy to Golden's
> attorney upon filing. [sic]  Golden would have 14 days from the date of the
> filing of the affidavit to object.  After the filing of an objection, the Court
> would have the discretion to either enter the Judgment of Foreclosure, or
> conduct a hearing on the alleged default on the next available trial date. [sic]
> A default as defined herein shall be the failure of Golden to perform any of
> the following terms:
>
> > a. Have the construction substantially completed on or before
> > February 1, 2008.
> > b. Pay off the underlying obligation on or before August 1,
> > 2008.
> > c. Pay the difference for any increased costs beyond the
> > disbursement schedule out of her own funds within a period
> > of 30 days after any of the individual disbursement. [sic]
> > d. Maintain adequate homeowners insurance on the property.

In mid-July or early August, 2008, Pine Banks and Wallace sought entry of

Judgments of Foreclosure in the Maine Superior Court pursuant to the terms of the

Allonge.  Golden filed five affidavits in opposition to affidavits filed by counsel to Pine

Banks and Wallace, specifically the affidavits of Alan E. Shepard, Esq. and Steven Ross,

Esq.  In the cover letter to her first affidavit, Golden requested a hearing before Superior

Court Judge Brennan, opposing the requests of Pine Banks and Wallace for the entry of

judgments without a hearing.  In her affidavit, dated July 10, 2008, which she attached to

her August 7, 2008 cover letter, she asserted that "there was a modification of the Allonge

and Reinstatement Agreement" and that she was not in default under the terms of the

Allonge, stating that she had made the $50,000 payment, achieved "substantial completion"

of construction, and obtained a certificate of occupancy as of June 25, 2008.  In a cover letter

to the Superior Court, dated August 18, 2008, to which she attached a supplemental

affidavit, Golden again requested a hearing and reiterated her belief that the Allonge had

been "modified by the parties shortly after it was signed."  She attached e-mail

correspondence to her supplemental affidavit, indicating her intention to rent the

property.[4]  Golden transmitted a third affidavit to the Superior Court on August 25, 2008.

In the cover letter, she noted that Judge Brennan intended to conduct a hearing on August

26, 2008.  Golden submitted two additional affidavits after the August 26, 2008 hearing.

In an affidavit dated September 3, 2008, she objected to the amount of the judgments

sought by Pine Banks and Wallace and requested an evidentiary hearing.  She reiterated

those objections in her final affidavit dated September 4, 2008.

Rejecting the arguments advanced by Golden, the Superior Court entered judgments

in favor of Pine Banks and Wallace on or around September 15, 2008 in the amounts of

$1,070,101.40 and $735,005.85, excluding per diem interest accruing at the rates of $424.89

---

[4] In its Memorandum in Opposition to the Joint Motion to Dismiss, the Debtor
stated that "[i]n the summer of 2008, Golden and Ross collaborated in preparing
Golden's home for sale or rent. . . .

and $213.57, respectively.[5]  According to the Debtor in its Memorandum, Golden moved

for reconsideration, but the Superior Court denied the motion on June 12, 2008. Golden

appealed.   On May 12, 2009, the Maine Supreme Judicial Court affirmed, stating the

following:

> Contrary to Golden's contentions, the court did not violate her right of due
> process when it entered the judgments of foreclosure without first
> conducting an evidentiary hearing on her allegation that an allonge
> agreement, entered into in settlement of the claims, had been modified.
> Golden acknowledged in the allonge agreement that she had defaulted on
> the promissory notes.  She also agreed that a judgment of foreclosure could
> be entered upon any further defaults.  Golden defaulted by failing to pay the
> underlying obligations by the date set forth in the allonge agreement.  The
> agreement further provided that the court could accept an affidavit as
> evidence of any default and would have the discretion either to enter a
> judgment of foreclosure or to conduct a hearing.  *The allonge agreement is a*
> *binding contract in settlement of defaults.  By entering into the allonge agreement,*
> *Golden waived any due process argument on this issue, as to either the defaults or*
> *the amounts owed.*

In re Sunshine Three Real Estate Corp., 2009 WL 3617798 at *4 (citing Housman v. Golden,

No. Yor-08-559, Slip op. at 1-2 (May 12, 2009) (citations omitted)(emphasis supplied).

Golden requested reconsideration of the decision of the Maine Supreme Judicial

Court.  It denied her motion on June 12, 2009.  Golden then appealed the decision of the

Maine Supreme Judicial Court to the United States Supreme Court.  The United States

Supreme Court entered an order, dated January 10, 2010, denying Golden's petition for

certiorari.

---

[5] Accrued interest through the petition date equals approximately $213,000 on
both notes.  Therefore, the total debt, excluding any outstanding real estate taxes, equals
approximately $2,018,000.

In the Adversarial Complaint filed with this Court on October 16, 2009, the Debtor set forth additional facts with respect to the proceedings in the Maine state court proceedings that were not part of the record before the Court pertaining to the Motion for Relief from the Automatic Stay filed by Pine Banks. The Debtor stated that on August 18, 2009, the Maine Superior Court had denied Golden's request for a stay of the redemption period. It also acknowledged that Sunshine Three Real Estate Corporation was incorporated on August 6, 2009, eleven days before it filed a Chapter 11 case and four days before Golden transferred the property to it.

Additionally, at the January 21, 2010 hearing, Pine Banks represented that it conducted a foreclosure sale of the property at which it was the successful bidder. It obtained the property for $1,600,000.

## III. THE ADVERSARY PROCEEDING

On October 16, 2009, the Debtor filed a complaint against Charles J. Housman, as Trustee of Pine Banks Nominee Trust, Wallace and Ross. Its Adversarial Complaint tracks Golden's counterclaim set forth in the "Answer of Defendant Roberta A. Golden and Counterclaim with Jury Demand" filed in the Maine Superior Court, supplemented with the allegations made by Golden in the letters and affidavits she filed in the Superior Court, following the execution of the Allonge. For the reasons set forth below, the Court shall enter orders denying the Debtor's Motion for Leave to File an Amended Adversarial Complaint and granting the Defendants' Motion to Dismiss the Debtor's Adversarial Complaint.

-10-

On November 16, 2009, the Defendants filed their Joint Motion to Dismiss together with a Memorandum.  On January 5, 2010, the Debtor filed a Memorandum of Law in Opposition to the Joint Motion to Dismiss, as well as a Motion for Leave to File an Amended Complaint to add Golden as a necessary party and to add "necessary facts in order to cure any pleading deficiencies and add any necessary Counts."  On January 11, 2010, the Defendants filed a Joint Opposition to the Motion for Leave to File Amended Complaint.

Golden's Counterclaims filed in the Maine Superior Court, the Debtor's original Adversarial Complaint, and the Debtor's Amended Adversarial Complaint contain most of the same allegations.  Through its Motion for Leave to File an Amended Adversarial Complaint, the Debtor, in addition to seeking to add Golden as a co-plaintiff, expanded the grounds for relief sought in Count VI, VII and IX by citing, *inter alia*, the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D,[6] and the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and  1638(b),[7] as well as various state and federal regulations.  With respect to Count IX of the Amended Adversarial Complaint, the Debtor asserted a claim against Ross "as agent and individually," and it added an additional count, Count X.  The Amended Adversarial Complaint contains the following counts:

---

[6] The Plaintiffs did not cite any particular sections of the Consumer Credit Cost Disclosure Act or address section 2 which provides that commercial credit transactions are exempt.  *See* Mass. Gen. Laws ch. 140D, § 2(a).

[7] The disclosure requirements of 15 U.S.C. § 1638 apply only to "consumer credit transaction[s]." 15 U.S.C. § 1638(a).

Count I: By Sunshine and Golden for Disallowance of Default Interest as a Penalty and Disallowance of Interest from September 1, 2005 through August 1, 2007 as a Penalty to Pine Banks;

Count II: By Sunshine and Golden for Declaratory Judgment as to the Amount Due Pine Banks;

Count III: By Sunshine and Golden for Disallowance of Default Interest as a Penalty and Disallowance of Interest from September 1, 2005 through August 1, 2007;

Count IV: By Sunshine and Golden For Declaratory Judgment as to the Amount Due Wallace;

Count V: By Sunshine and Golden for Subordination of the Wallace Claim pursuant to section 510(c) of the Bankruptcy Code;

Count VI: By Sunshine and Golden for Damages from Unfair and Deceptive Acts and Practices as to Pine Banks;

Count VII: By Sunshine and Golden for Damages for Unfair and Deceptive Acts and Practices by Wallace;

Count VIII: Breach of Contract of Good Faith and Fair Dealing as to Pine Banks, Wallace and Ross;

Count IX: By Sunshine and Golden for Unfair and Deceptive Practices by Ross, as Agent and Individually;

Count X: By Golden for Deceit, Negligent Misrepresentation and Misrepresentation against Ross, as Agent and Individually.[8]

The Statement of Facts in the Adversarial Complaint and the Statement of Facts in

---

[8] As noted above, Golden filed the following counterclaims in the York County Superior Court action: breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); failure to comply with the loan documents and change in course of dealings (Count III); fraud, deceit and misrepresentation (Count IV); "violation of Me. Rev. St. Ann. tit. V., ch. 10 and violation of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)" [sic] (Count V); and violation of Mass. Gen. Laws, ch. 93A, §§ 2 and 11 (Count VI).

-12-

the Amended Adversarial Complaint omit reference to the judgments entered by the Maine Superior Court and the Maine Supreme Judicial Court, but the Debtor acknowledged the judgments and their affirmance in its Memorandum.  The Court took judicial notice of those judgments as well as the denial of the petition for certiorari by the United States Supreme Court at the January 21, 2010 hearing, without objection by the Debtor or Golden. Moreover, the Statement of Facts in the Adversarial Complaint and the Statement of Facts in the Amended Adversarial Complaint contains no specific allegations or references to conduct by the Defendants that occurred *after* the entry of judgments by the Maine Superior Court.

## IV. POSITIONS OF THE PARTIES

### A. The Defendants

The Defendants seek dismissal of the Debtor's Complaint, citing Fed. R. Bankr. P. 12(b)(6).  They argue that the Adversarial Complaint should be dismissed for five reasons: 1) the Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine; 2) res judicata precludes relitigation of the claims set forth in the Adversarial Complaint because they are based upon the same allegations and were fully adjudicated in the Maine state courts by Golden; 3) the Debtor lacks standing to assert the claim because it was neither a party nor third party beneficiary of any contract; 4) the Debtor's claim for equitable subordination fails to set forth the requisite elements of the cause of action with sufficient particularity; and 5)  Massachusetts law does not apply to the Debtor's claims for unfair and deceptive practices and the Debtor failed to send a demand letter under Mass. Gen.

-13-

Laws c.93A.

The Defendants oppose the Debtor's Motion for Leave to File an Amended Adversarial Complaint as yet another dilatory tactic by Golden, adding that "[t]he amendments proposed by the Debtor in the Motion are futile to its claim for relief" as the proposed Amended Adversarial Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6). The Defendants also maintain that Golden is not a necessary party where she both transferred the property and assigned her causes of action to the Debtor.

## B. The Debtor

The Debtor opposes the Defendants' Motion to Dismiss, rejecting each of their five arguments. In the first place, it relies upon the pendency of its petition for writ of certiorari, to challenge the following:

> . . . Maine Supreme Court's denial of due process to Roberta Golden, the predecessor in title to Sunshine, when she was prevented from adducing any proof in support of her objections to foreclosure, denied the right to take testimony from or confront the respondents in rebuttal to their foreclosure request, and denied the opportunity to show and then argue on this evidence that the Allonge and Reinstatement Agreement was modified by the parties so that foreclosure was not warranted.

It adds:

> It should therefore be further noted that the Debtor and Plaintiff, Sunshine, is a holding company, a shell corporation composed of Roberta Golden and her husband, holding Golden's rights to the property, including rights subsumed by the petition for certiorari filed in the United States Supreme Court. The foreclosure judgment was not final as to Sunshine. . . The rights assigned to Sunshine on September 2, 2009, [sic] are the same rights Golden had, i.e., the right to have a final decision on the redemption rights ruled upon by the U.S. Supreme Court via a timely filed petition for writ of

-14-

certiorari which was timely pursued. . . .

In support of its contentions, the Debtor includes in its Memorandum a "Factual Background" in which it outlined the proceedings in the Maine courts as well as Golden's execution of the Allonge.  The Debtor asks this Court take judicial notice of Golden's statement in Golden's Motion for Reconsideration that "the lower court improperly entered final judgment on Housman's foreclosure claim *because the unresolved counterclaims are intertwined with the merits of foreclosure.  Golden's counterclaims are meritorious and have never been addressed*." (emphasis supplied).

The Debtor also argues that Golden did not waive her constitutional rights when she executed the Allonge, and it sets forth the numerous ways that it was modified by the parties after its execution.  It emphasizes its view that Golden's claims have never been addressed or adjudicated by the Maine state courts, while simultaneously asking that this Court take judicial notice of Golden's Statement of the Issues Presented with respect to her appeal to the Maine Supreme Judicial Court.   It concludes:

> The claims brought in the Adversary Proceeding do not require bankruptcy Court [sic] review and rejection of the State Court judgment.  The claims, in some part, arose after the decision in the Maine State Court [sic]; that is, disallowance of default interest as a penalty, and subordination of the Wallace claim pursuant to Sec. 510(c) of the Bankruptcy Code. Furthermore, the claims against Steven Ross, Esq., have never been brought prior to this Adversary Proceeding, neither by Sunshine nor by Golden.   Further, Sunshine is not a state court loser.

## V. DISCUSSION

### A. Applicable Legal Standards under Rules 12 and 15

A motion to dismiss under Rule 12(b)(6) must be granted unless the complaint

contains sufficient factual matter, accepted as true, to "'state a claim to relief that is

plausible on its face.'" Cunningham v. Nat'l City Bank, 588 F.3d 49, 52 (1st Cir. 2009) (citing

Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937, 1949 (2009), and quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  If matters outside the pleadings are presented to and

not excluded by the court, the motion to dismiss must be treated as a motion for summary

judgment under Rule 56. *See* Fed. R. Civ. P. 56(d), made applicable to this proceeding by

Fed. R. Bankr. P. 7012.

Without so stating, the Defendants rely upon Fed. R. Civ. P. 12(b)(1) in asserting that

this Court lacks jurisdiction under the Rooker-Feldman doctrine, as well as Fed. R. Civ. P.

12(b)(6), in seeking dismissal of the Debtor's Adversarial Complaint.   The court in

Desrosiers v. Transamerica Fin. Corp. (In re Desrosiers), 212 B.R. 716, 718 n.1. (Bankr. D.

Mass. 1997), explained the relationship between Rule 12(b)(1) and (b)(6):

> Transamerica based its Motion to Dismiss the Adversary Proceeding on
> Federal Rule of Civil Procedure 12(b)(1), made applicable here by Federal
> Rule of Bankruptcy Procedure 7012.  Rule 12(b)(1) relates to the lack of
> subject matter jurisdiction. . . . Transamerica argues only that the causes of
> action raised in this adversary proceeding are barred by the doctrine of res
> judicata. Thus, the applicable ground for dismissal is the Complaint's failure
> to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6);
> *see, e.g.*, Mullens v. United States, 785 F.Supp. 216, 222 (D. Me. 1992)
> (dismissing a cause of action barred by res judicata under Fed.R.Civ.P.
> 12(b)(6)). Further, because Transamerica relies on matters outside the
> pleadings, the Court must treat the motion as one for summary judgment
> under Federal Rule of Bankruptcy Procedure 7056, incorporating Federal
> Rule of Civil Procedure 56. *See* Fed.R.Civ.P. 12(b) ("If, on a motion asserting
> the defense numbered (6) to dismiss . . . matters outside the pleading are
> presented to and not excluded by the court, the motion shall be treated as
> one for summary judgment and disposed of as provided in Rule 56"). . . .
> Rule 12(b) requires that all parties "be given reasonable opportunity to
> present all material made pertinent to such a motion by Rule 56" . . . .

-16-

212 B.R. at 718 n.1.

Under these standards, and based upon the record of proceedings in this case, including the entry of final judgments by the Maine Superior Court in favor of Pine Banks and Wallace, the decision of the Maine Supreme Judicial Court affirming the Maine Superior Court judgments, and the denial of the petition for certiorari by the United States Supreme Court, the Defendants are entitled to an order 1) dismissing the Debtor's Adversarial Complaint for lack of subject matter jurisdiction with respect to Counts I through IV and VI through VIII, and 2) an order dismissing Count I through IV and VI through X of the Amended Adversarial Complaint for failure to state a claim upon which relief can be granted.  As a further alternative, the Defendants are entitled to an order granting summary judgment with all Counts, including Count V, for the reasons set forth below.

With respect to the Debtor's Motion for Leave to Amend, the First Circuit has set forth the following standard:

> Rule 15(a) reflects a liberal amendment policy, and provides that a court "should freely give leave when justice so requires." Even so, "the district court enjoys significant latitude in deciding whether to grant leave to amend," and we "defer to the district court's decision 'if any adequate reason for the denial is apparent on the record.'" Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment.

U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009).  For the reasons set forth below, the Court finds that the Debtor's Motion for Leave to Amend is futile.

A. <u>Analysis</u>

1. The Rooker-Feldman Doctrine

Even were this Court to permit the Debtor to amend its Adversarial Complaint to add Golden as a plaintiff, the Court lacks jurisdiction to determine the merits of the causes of action set forth in Counts I, II, III, IV, VI, VII, and VIII based upon the Rooker-Feldman doctrine with respect to Pine Banks and Wallace. The Rooker-Feldman doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005). It "strip[s] federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions." <u>In re Sanders</u>, 408 BR. 25, 33 (Bankr. E.D.N.Y. 2009) (citing <u>Book v. Mortgage Elec. Registration Systems</u>, 608 F.Supp.2d 277, 288 (D. Conn. 2009) and <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 84 (2d Cir. 2005)).

The relief sought by the Debtor and Golden in the Amended Adversarial Complaint is a repetition of previous assertions made by Golden in the Maine state court proceedings. In the Maine Superior Court, Golden asserted Counterclaims against Pine Banks and Wallace and made additional allegations in her affidavits against the Defendants and Ross filed with that court. Both the Maine Superior Court and the Maine Supreme Judicial Court rejected her claims. Golden's appeal to the Maine Supreme Judicial Court was not an interlocutory appeal. In entering judgments against Golden on or around September

-18-

15, 2008, setting forth the amount of principal, accrued interest, attorneys' fees and per diem interest, the Maine Superior Court disposed of Golden's Counterclaims and rejected her arguments relating to modification of the Allonge and any misconduct on the part of the Defendants relating to its procurement and implementation. The Maine Supreme Judicial Court similarly rejected Golden's arguments, concluding that "Golden waived any due process argument on this issue [namely that the Allonge was a binding contract in settlement of defaults], as to either the defaults or the amounts owed."

Through Counts I, II, III, IV, the Debtor and Golden seek to reverse the decisions of the Maine Superior Court and Supreme Judicial Court, review of which was denied by the United States Supreme Court. This Court finds that, to the extent the Debtor purports to challenge the validity and amount of the foreclosure judgments based upon modification of the Allonge, this Court lacks jurisdiction to adjudicate the merits of those claims under the Rooker-Feldman doctrine. In re Sanders, 408 B.R. at 33.

With respect to the claims set forth in Count VI through VIII, the Court finds that they also involve allegations that were asserted in Golden's Counterclaims and were extinguished by the final judgments of the Maine Superior Court in mid-September 2008, which were affirmed by the Maine Supreme Judicial Court. Accordingly, this Court lacks jurisdiction with respect to those claims under the Rooker-Feldman doctrine. Id.

The Court also rejects the Debtor's assertion that it is not "a state court loser." Golden transferred the property to the Debtor shortly after its incorporation and shortly before the commencement of the Debtor's bankruptcy case for the purpose of preventing

-19-

Pine Banks from conducting a foreclosure sale.  She assigned her rights against the

Defendants with respect to the property.  She cannot, as sole shareholder of the Debtor,

confer any perceived benefit from ownership of the property on the Debtor, while

simultaneously attempting to shield it from the ramifications stemming from her actions

in the Maine state court proceedings.

Unquestionably, there is an identity of interest between the Debtor and Golden.  The

Debtor in moving to amend its Adversarial Complaint to add Golden as a co-plaintiff and

in opposing the Motion of Pine Banks for Relief from the Automatic Stay admitted as

much.[9]   Under Maine law, "if a corporation is closely held, then the judgment in the

shareholder's action is conclusive on the corporation except when relitigation is necessary

to protect the interest of another owner or a creditor of the corporation.  *See* Spickler v.

Dube, 644 A.2d 465, 468 (Me. 1994) (citing Red Carpet Corp. of Panama City Beach v.

---

[9] In its memorandum filed in conjunction with the Motion of Pine Banks for
Relief from the Automatic Stay, the Debtor stated:

> Title to the property was taken by Sunshine Three Real Estate
> Corporation, a real estate holding corporation, with Peter A. Poulos as
> President.  Peter Poulos is former owner and Trustee of an entity which
> owned the property in the past.  He is also the husband of Roberta
> Golden.  Golden had transferred the property to Sunshine, which was
> established to take title to the property and to become a Chapter 11 debtor
> in the event that the Pine Banks/Wallace/Ross foreclosure could not be
> enjoined.  This was the only means by which Roberta Golden could
> protect and preserve her multi-million dollar investment in the property
> and could avoid having the value of the property radically diminished
> through foreclosure by Pine Banks - a notorious "hard money" lender.

In re Sunshine Three Real Estate Corp., 2009 WL 3617798 at * 12.

Roberts, 443 So.2d 377, 380 (Fla. App.1983) (closely held corporation barred from bringing

abuse of process action against former law firm when owners had previously filed and lost

on counterclaims on same issues). *See also* Rivera v. Banco Santander (In re Rivera), No. 07-

00340, 2009 WL 2898844 (Bankr. D. P.R. Mar. 12, 2009)(citing Ford Gas Co. v. Wanda

Petroleum Co., 833 F.2d 1172, 1174 (5th Cir.1987), Freeman v. Lester Coggins Trucking, Inc.,

771 F.2d 860, 864 (5th Cir.1985), and Southwest Airlines Co. v. Texas Int'l Airlines, Inc., 546

F.2d 84, 95 (5th Cir. 1977), *reh'g denied*, 550 F.2d 42 (1977), *cert. denied,* 434 U.S. 832 (1977)).

Because the Debtor is in privity with Golden, its sole shareholder, the Court finds that for

purposes of the Rooker-Feldman doctrine the Debtor stands in her shoes as a state court

loser.

    2. Res Judicata

    The Court also concludes that res judicata, or claim preclusion, bars consideration

of the allegations relating to modification of the Allonge as a basis to challenge the

judgments of the Superior Court which established the amounts due and owing Pine Banks

and Wallace, namely $1,07010.40 and $735,005.85, excluding per diem interest accruing at

the rates of $424.89 and $213.57 to Pine Banks and Wallace, respectively.

    In Schwartz v. Schwartz (In re Schwartz), 409 B.R. 240 (B.A.P. 1st Cir. 2008), the

United States Bankruptcy Appellate Panel for the First Circuit explained the parameters

of claim preclusion.  It stated:

    The doctrine of res judicata prohibits all parties *and their privies* from
    relitigating issues which were raised *or could have been raised in a previous*
    *action, once a court has entered a final judgment on the merits in the previous*
    *action. See* FDIC v. Shearson-Amer. Express, Inc., 996 F.2d 493, 497 (1st

-21-

Cir.1993) (citations omitted). The res judicata doctrine is generally used to refer to claim preclusion. *See* Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30-31 (1st Cir.1994) (citing Dennis v. Rhode Island Hosp. Trust Nat'l Bank, 744 F.2d 893, 898 (1st Cir.1984)). The essential elements of res judicata are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both suits. Id. (citing Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 6 (1st Cir.1992)). Once these elements are established, the parties are barred not only from relitigating previously disputed matters, but also from introducing any related matters that could have been offered in the original action. *See* id. (citing Dennis, 744 F.2d at 898).

Schwartz, 409 B.R. at 249 (emphasis supplied). *See also* Dall v. Goulet, 817 F.Supp. 518, 521 (D. Me. 1994) ("Under Maine law, prior to applying the doctrine of res judicata, "the court must satisfy itself that 1) the same parties, or their privies are involved; 2) a valid final judgment was entered in the prior action; and 3) the matters presented for decision were, or might have been, litigated in the prior action.").

The essential elements for application of res judicata are present here. The Debtor's Amended Adversarial Complaint and Golden's assignment of her claims to the Debtor fail to revive her claims for consideration by this Court.  For purposes of res judicata in this case, the foreclosure judgments are final as to both Golden and the Debtor.  Because the Debtor is in privity with Golden for purposes of claim preclusion, amendment of the Adversarial Complaint to add her as co-plaintiff is futile.  *See* FDIC v. Fordham (In re Fordham), 130 B.R. 632, 646 (Bankr. D. Mass. 1991)(citing Liberty Leather Corp. v. Callum, 653 F.2d 694, 700 (1st Cir. 1981), and Comm'ns Sys., Inc. v. City of Danville, Ky., 880 F.3d 887, 895 (6th Cir. 1989)).  Indeed, because the Debtor corporation did not exist at the time of the acts and conduct complained of in the Adversarial Complaint and was not a

signatory to the notes and mortgages pursuant to which Golden encumbered the property,

the Court infers that Golden's assignment and her attempted joinder as a co-plaintiff was

little more than a ruse to create jurisdiction in this Court and to shield Golden's other assets

from potential deficiency claims.  In view of the principles set forth above, the Defendants'

Motion to Dismiss is meritorious with respect to Counts I through IV and VI through VIII.

Res judicata also bars relitigation of the Debtor's fraud and consumer protection

claims.  Golden, in executing the note to Pine Banks, specifically acknowledged that the

loan was commercial in nature and exempt from truth in lending laws.  In executing the

Allonge, as the Maine Supreme Judicial Court determined, she waived any claims

associated with the alleged misconduct of Pine Banks and Wallace and the applicability of

consumer protection and truth in lending laws.

C. Counts IX and X of the Amended Adversarial Complaint against Ross

Through the proposed amended Adversarial Complaint, Golden and the Debtor

request leave to expand the relief requested in Count IX against Ross, as the agent for the

other Defendants, and individually, and to add Count X, against Ross, as the agent of Pine

Banks and Wallace, and individually, for unfair and deceptive trade practices, violations

of state and federal truth in lending laws, and misrepresentation.  The proposed

amendments under Counts IX and the addition of Count X fail to state plausible claims for

relief against Ross, either individually or as agent, under the Iqbal standard discussed

above.

First, the state and federal lending laws cited by the Debtor in support of Counts IX

-23-

and X do not apply in the circumstances of this case.  The short-term note executed by Golden, which was for the purpose of constructing a vacation and retirement home, provided that it was commercial in nature.  In the Allonge, Golden acknowledged the validity of the note and thus waived any consumer protection causes of action. Additionally, in her affidavits filed in the Maine Superior Court, Golden attached copies of e-mails referencing her decision to rent the property. Accordingly, state and federal truth in lending disclosures were not required, and the note so stated.  Mortgages on homes, which are not the principal dwelling of the consumer or which are for the purposes of securing construction financing, as well as  business or commercial loans, are not subject to state and federal lending laws.  *See* 15 U.S.C. § 1602(w) ("The term "residential mortgage transaction" means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."); 15 U.S.C. § 1635(e)(1) ("This section [Right of rescission as to certain transactions] does not apply to . . . a residential mortgage transaction as defined in section 1602(w) of this title");  Mass. Gen. Laws. ch. 140D § 1 (using § 1602(w) definition of "residential mortgage transaction"), Mass. Gen. Laws. ch. 140D § 2 (This chapter shall not apply to the following: . . . Credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or to government or governmental agencies or instrumentalities, or to organizations"), Mass. Gen. Laws. ch. 140D §  10(e)(1)(A) ("[t]his section shall not apply to . . . a residential

-24-

mortgage transaction as defined in section one").

With respect to the consumer protection and fraud claim against Ross, this Court finds that they fail to state plausible causes of action under the Iqbal standard. Even if Golden could assert such claims, the Debtor corporation was not the recipient of the disclosures and even as assignee, would lack standing to assert causes of action that apply to consumers. See Kawa v. U.S. Bank, No. 08:08CV91, 2009 WL 700593 (D. Neb. 2009) ("Congress clearly intended the TILA to apply to the 'extension of consumer credit' by defining consumer credit as transactions that are 'primarily for personal, family, or household purposes.'"). In view of the provisions of applicable state and federal truth in lending laws cited by the Debtor, the Court finds that it has failed to state plausible claims for relief under Counts IX and X of the Amended Adversarial Complaint using the Iqbal standard.

Count IX against Ross fails to state a plausible claim for relief under M.G.L. c. 93A. Golden and the Debtor are suing Ross in his capacity as agent, namely, the attorney for the Defendants in the transactions. Only a client or someone acting on a client's behalf can assert a claim under Mass. Gen. Laws ch.93A claim against an attorney. See Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 462-63 (1997). Golden and the Debtor were not Ross's clients, and he was not engaged in business or commerce with either of them. Furthermore, Count X, in which Golden and the Debtor assert a claim for "Deceit, Negligent Misrepresentation and Misrepresentation as Agent and Individually" also fails. Any claims Golden may have had against Ross could have and should have been brought

-25-

in the Maine state court action, as they arose out of the same loan transactions and are

based on the same causes of action which Golden asserted there.  The instant claims against

Ross are thus barred by principles of res judicata.

D. <u>Count V</u>

Through Count V, the Debtor and Golden seek to equitably subordinate the claim

of Wallace (presumably a deficiency claim) to the claims of creditors.  Section 510(c)

provides:

> (c) . . . after notice and a hearing the court may-
>
>> (1) under principles of equitable subordination, subordinate for
>> purposes of distribution all or part of an allowed claim to all or
>> part of another allowed claim or all or part of an allowed
>> interest to all or part of an allowed interest; or
>>
>> (2) order that any lien securing such a subordinated claim be
>> transferred to the estate.

11 U.S.C. § 510(c).  In <u>Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)</u>, 432

F.3d 448 (3d. Cir. 2006), the United States Court of Appeals for the Third Circuit discussed

section 510(c).  It stated:

> [T]he doctrine of equitable subordination "is remedial, not penal, and should
> be applied only to the extent necessary to offset specific harm that creditors
> have suffered on account of the inequitable conduct." [<u>In re SubMicron Sys.
> Corp.</u>, 291 B.R. 314, at 327 (D. Del. 2003)] (citing <u>Trone v. Smith ( In re
> Westgate-California Corp.)</u>, 642 F.2d 1174, 1178 (9th Cir.1981)); see also
> Citicorp Venture Capital, 160 F.3d at 991 ("A bankruptcy court should ...
> attempt to identify the nature and extent of the harm it intends to
> compensate in a manner that will permit a judgment to be made regarding
> the proportionality of the remedy to the injury that has been suffered by
> those who will benefit from the subordination."); <u>Stoumbos v. Kilimnik</u>, 988
> F.2d 949, 960 (9th Cir.1993) ("A claim will be subordinated only to the claims
> of creditors whom the inequitable conduct has disadvantaged."); <u>Estes v. N</u>

& D Props., Inc. ( In re N & D Props., Inc.), 799 F.2d 726, 733 (11th Cir.1986)
(stating that "equitable subordination operates only to redress the amount
of actual harm done").

In re SubMicron Sys. Corp., 432 F.3d at 462.

The Court takes judicial notice of the Debtor's schedule of liabilities. The Debtor

listed no creditors, other than Pine Banks, Wallace and the Town of Ogunquit, on its

schedules.[10] The Court takes further judicial notice that the Debtor moved to amend its

Schedule F on January 22, 2010 following the hearing on January 21, 2010, and submitted

an Amended Schedule F, listing Golden as the holder of a contingent claim in the amount

of $500,000 as follows:

> 06/2006-01/201 [sic] Monies lent for construction - potential
> claims for deceit etc setoff

The Debtor did not execute the Declaration Concerning Debtor's Schedules, which must

be signed under penalty of perjury.

The Court finds that Count V of the Amended Adversarial Complaint in which the

Plaintiffs seek the equitable subordination of Wallace's claim pursuant to 11 U.S.C. § 510(c)

fails to state a plausible claim upon which relief can be granted and, in view of the

undisputed facts, Wallace is entitled to summary judgment on Count V.

In Count V, the Plaintiffs allege that Wallace engaged in numerous instances of

---

[10] As noted above, the Town of Ogunquit should have been listed on Schedule D.
See In re Jennings, 304 B.R. 8, 12 (Bankr. D. Me. 2004) ("In Maine, municipalities are
granted a lien on real estate to secure the payment of legally assessed real estate taxes.
36 M.R.S.A. § 552. The lien "takes precedence over all other claims . . . The lien
"continue[s] in force until the taxes are paid or until said lien is otherwise terminated by
law." 36 M.R.S.A. § 552.").

inequitable conduct in connection with its grant of a mortgage to Golden which harmed "Sunshine and its' creditors" [sic]. Unless this Court were to give credence to the Debtor's Amended Schedule F, the Debtor has no unsecured creditors, other than the potential deficiency claims of Wallace and Pine Banks. The Court gives no credence to the Debtor's Amended Schedule F. Golden is the sole shareholder of the Debtor with an "interest" in the Debtor. The Debtor's amendment of Schedule F to list loans from Golden before it was even incorporated is preposterous.

The Debtor was not incorporated until eleven days before the filing of its bankruptcy petition. It could not owe money to Golden for sums she expended on the property before its inception. The only debt listed on the schedules other than Pine Banks and Wallace is a debt owed to the Town of Ogunquit, Maine in the sum of $8,500 for 2009 real estate taxes. This debt, erroneously listed on Schedule E - Creditors Holding Unsecured Priority Claims, was a secured tax claim that was satisfied at the time of the foreclosure sale.[11] Thus, there are no creditors that could have been harmed by Wallace's alleged inequitable conduct, other than Wallace. Moreover, in view of the foreclosure sale conducted by Pine Banks and the rejection of the claims set forth in this adversary proceeding, subordination of Wallace's claim to Golden's interest is meaningless. The Debtor has no income and no assets so there will be no distributions to Wallace or Golden. Thus, the Plaintiffs' claim for equitable subordination must fail. In view of the existing schedules and the Debtor's purported, unmeritorious and defective Motion to Amend

---

[11] *See* note 10, *supra.*

Schedule F,  Count V fails to state a cause of action under Fed. R. Civ. P. 12(b)(6).

## VI. THE  MOTION TO RECOVER LEGAL FEES AND COSTS

The Defendants have sought to recover their attorneys' fees and costs incurred in seeking dismissal and in this action pursuant to Fed. R. Bankr. P. 7008(b) which provides: "A request for an award of attorney's fees shall be pleaded as a claim in a complaint, cross-claim, third party complaint, answer, or reply as may be appropriate.  The Defendants have not asserted a legal theory in support of their request, and several authorities may be a basis for an award of attorneys' fees.  *See, e.g.,* 28 U.S.C. § 1927;  Fed. R. Bankr. P. 9011. Accordingly, the Court shall defer ruling on the Defendant's request pending further submissions.

## VII. CONCLUSION

Because this Court lacks jurisdiction to consider Counts I through IV and Counts VI through VIII under the Rooker-Feldman doctrine and because res judicata prevents relitigation of Counts I through IV and IV through X, and because Count V fails to state a claim upon which relief can be granted, the Court shall grant the Defendants' Motion to Dismiss.  Alternatively, the Court grants summary judgment with respect to Count V of the Debtor's Adversarial Complaint.

In view of the foregoing, the Court shall enter orders denying the Motion for Leave to File an Amended Adversarial Complaint and granting the Joint Motion to Dismiss Adversary Proceeding.  The Court also shall enter an order requiring the Defendants to file a Memorandum of Law setting forth the basis for their fee request, the amount requested,

and an itemization of all services and expenses in the form of an application for compensation in accordance with MLBR 2016-1 by March 12, 2010, and permitting the Debtor to file a Reply Memorandum by March 19, 2010.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: February 18, 2010
cc: Gershon M. Gulko, Esq., Charles A. Dale, III, Esq.